Good morning, I am Andrea Cook and I'm here on behalf of Mr. Lopez. PMA is asking this court to affirm a rule which flies in the face of the public policy that provides protection for people who are recovering addicts, and that protection is clearly stated and articulated in both the federal and state statutes. Counsel, let me just tell you for my part where my concern lies, and it is in the absence of any statistical information to support what, in theory, is a possible claim. Because in theory, every single employee could be a recovering alcoholic who happened to take their first test after they were in recovering mode. And theoretically, everybody who's been turned away can have their one and only alcohol binge and have no addiction whatsoever. So what's to me missing is the demonstration that my hypothetical isn't what's happening. Well, I'd like to address that, Your Honor, with respect to the disparate impact. Because the court, the lower court, did hold that in the absence of statistics that we could not move forward. And it's our position, and the court cited to a number of cases. In all of those cases, the court relies on facts where there are measurable characteristics. So, for example, waste. But in theory, you know, it doesn't even matter if there have been any cases in the past, I guess. My hypothetical concern would be there even in the absence of any cases. Because what you're trying to demonstrate is that recovering addicts are more likely than other people to be excluded by this policy. But in theory, that's not necessarily so. And so why would we draw such an inference in the absence of some demonstration of it? Well, with respect to the disparate impact case, Your Honor, I mean, the rule is a discrete rule that is not a general misconduct rule. It is a discrete rule which applies only to people who've tested positive. And so based on that, every person who would ever be a recovering addict would be impacted by that rule. Why? If they're recovering, they wouldn't test positive. Well, if they are recovering subsequent to that initial test, because the rule, the one-strike rule at issue in this case, is a rule with which PMA applies if you test. That's correct. And so in theory, you could be right or I could be right that it has a disparate impact or no impact whatsoever. But why should we draw one inference or the other if you don't tell us what's happening in the real world with this test? So, Your Honor, this particular disability, that of recovering addict, is not identifiable. It would be, it's our contention, virtually impossible to obtain those statistics. And the lower court or, excuse me, this court ruled in Hernandez and somewhat similar facts that a disparate treatment case could move forward in the absence of statistics. And we feel that it would be... But you had in Hernandez evidence of specific intention, at least at the summary judgment stage. Well, we're, yes, that's true with respect to the disparate treatment case. But I'm, I think the court is addressing disparate impact. You could, well, but first of all, there are no statistics kept on this. Do you know of any statistics kept on the number of people who apply for these jobs who have been rejected because they showed positive and then went into a drug rehab program and came back again and were clean for a year or two years or whatever it was and then were rejected by the Pacific Maritime Association? No, Your Honor. There are no statistics. There are no statistics, Your Honor, and we know that 27 people out of this, of the thousands of people who were attempting to be hired at this point in time in 2005, we know that 27 of them were rejected based on a prior drug test. But it's my position, and I think a proper one, that it's probably even illegal to inquire of an individual whether or not they're a rehabilitated drug addict. And I understand the court's concern. But for all you know, the other 26 had their one and only binge drink the night before, and they've never used alcohol before or since, and they're not addicted to anything. As far as we can tell from this record. That's true. But if you take a case like this where the statistics, and there are courts, many courts, including this one, who have determined that statistics are another basis upon which to show evidence of a disparate impact. And in the absence of being able to obtain statistics, it would be that then Mr. Lopez and other recovering addicts in similar situations would then have no remedy under a disparate impact case. Well, you're not making a disparate treatment claim, as I take it. No, we are, Your Honor. We have both claims. We have both disparate impact and disparate treatment. What evidence is there that this employer either knew or cared about his addictive status at the time it made either of the determinations, the first one the drug test result, the second one the rule, applying its rule? I think the court hits upon it perfectly, that the employer. That was a question. I don't know what I'm hitting on. Is there any evidence that the employer didn't care? How can you have a disparate treatment claim if the employer doesn't care? Well, at the point in time when he first tested in 1998, there was no issue, and we don't take issue with that initial test, and we think it is appropriate that he, Mr. Lopez, was excluded. Was he hired at that time? No, sir, he was not. He was appropriately rejected because he tested positive, but when he came back in 2005 under a disparate treatment claim, that rule, the one-strike rule, then applied to him, and I'd like to address the court's issue about what evidence there is. Well, Your Honor, you have this language in Raytheon, an employer's policy. I'm just paraphrasing. Not to rehire workers who lost their jobs due to drug-related misconduct constituted a neutral, legitimate, nondiscriminatory reason for refusing to rehire. But this guy here never got hired. That's exactly correct, sir. He never got hired. And so what was the misconduct here?  There was no workplace misconduct, Your Honor. He just went to, he wanted to get on this list, and so he took this drug test and he tested positive for marijuana, and then they just put him on a barred list. He wasn't hired. He didn't have a chance to work for a day or two and then get fired. There was no work. The court is correct. This is not a circumstance of workplace misconduct. But I would like to address Judge Gray. Don't you need that? No, because the ADA and FEHA both protect applicants, and this is a case where, in Mr. Lopez's situation, he's actually making application to work again in 2005 after a period of significant recovery. He did everything that the public policy supporting these laws wants people to do. But I would like to, if I could please, address Judge Graber's ---- I'm trying to help you on that, but you seem to think that I wasn't. So anyway, he just went there and he took a test, and he tested positive for marijuana. Correct. So as far as Pacific is concerned, he's barred for life. That's correct. He's working up and down the coast of California, right? And the East Coast, Your Honor. And the East Coast. So it's wide-ranging restriction that impacts him for the rest of his life. That's correct, Your Honor. And then he went into a rehab program. Yes. Yeah. Now, there was no misconduct. No. I mean, what if they ---- I'm just wondering, what if there was a policy that if someone applies for this position with Pacific Maritime and the person is suffering from post-traumatic stress disorder, and they decide, well, that person who has that problem, maybe he's not the most reliable, and so we don't want to take anyone who has post-traumatic stress disorder. And then this person, who probably happens to be a veteran, then goes to the VA and goes through a long, intensive program and gets his life straightened out and his issues under control and then comes back and seeks that same type of job under Pacific Maritime policy, he'd be barred for life for getting a job either on the West Coast or the East Coast. Is that right? Well, if this rule applied to anyone ---- If this rule applies, yeah. But in this case, and this is demonstrative of, I believe, the discriminatory intent of the rule in part, which is the rule applies specifically and only to people who have tested positive. Which is, back to my question, on its face it's a neutral behavior-related rule, and you are not challenging the initial rejection because of the positive test. So what you're really only concerned about is that it's not a discretionary rule after that. One time and you're out is the rule. And so what evidence, back to my question, what evidence is there that at the time in 2005 that this neutral rule was applied to your client, they were specifically aware that he was a recovering addict and not just somebody who randomly had tested positive once? Well, I'd like to address the issue of what demonstrates specific intent. And the testimony of PMA's expert and former employee, Mr. Wallace, he testified that the one-strike rule applied to people who tested positive was to prevent people who were inclined to have three martini lunches, who would be unintelligent and who would be prone to criminal activity. And I think that characterization is the stereotypes that the ADA specifically sought to prevent and to not have people who rehabilitate be characterized as. So the intent in part is established by that. And I think the fact that the PMA, even though they articulate an appeal process, in other words, Judge Pragerson mentioned what happens if you have PTSD and you're constrained. Which is a different kind of rule. Right. But in every other circumstance, there is an appeal. But what PMA said is even though they've articulated an appeal and even though Mr. Lopez followed the appeal process and submitted an appeal, they can't consider it because the one-strike rule is prohibitive forever and ever. Even in his appeal, it's my recollection that he did not raise the issue that he was a recovering addict. Not at all, Your Honor. So as far as we know, the employer has no knowledge of that in his individual situation. Actually, that's not correct, Your Honor. The appeal states very specifically his efforts at rehabilitation and he identifies himself as a protected person under the ADA. It's typed by Mr. Lopez and it's very compelling. And it identifies specifically... And this is after the decision's been made initially and the appeal is in process? Yes. Say that again. Yes, sir. There was an initial letter in which Mr. Lopez received from PMA that said you passed or you failed that drug test in 1996. And this is the June 3rd letter that you're talking about? I think it's at M&M, Your Honor. Yeah, yeah. Okay. Page 210 of the AER. The actual letter itself is at some length. Or the Lopez deposition, 1108. I'm looking at some different page numbers. But is that the one that you're talking about? No, Your Honor. It's a lengthy letter. It's a full-page letter by Mr. Lopez. Okay. I'm looking at a two-page letter from Mr. Lopez. Behind which exhibit, Your Honor? Well, I just have a page number. And the page number is from? 1108 and 1109. I'm just trying to make sure that I'm looking at what you're actually asking me to look at. Well, I'm looking at 1108 and 1109, Your Honor. Okay. So we are looking at the same page. Yeah, we are on the same page, literally. Okay, terrific. Thank you. All right. So what about it? Simply that he was at the appeal level. That he at the appeal level. And I think the fact that PMA declines to even acknowledge that the appeal occurred is additional evidence of their discriminatory intent. When you look at a specific, when you look at this case as a disparate treatment. That came after the statement that there would be no appeal, right? Well. He'd been told there was no appeal. Actually, that's not true, Your Honor. He received a packet of information from PMA at the time. Page 1012. The letter to him says, all test results shall be final and binding with no appeal. He also received a packet of information at the time he made application, Your Honor, that said that he had the right to an appeal process. And it specified the very specific parameters and a time frame, 10 days. And that's exactly what Mr. Lopez availed himself of. He did appeal this. He did let his prospective employer know about the problems that he'd had and the recovery. And the imposition of this rule necessarily rules out anybody working who is a recovered addict. You're talking about the second time. Yes, sir. But, you know, it just seems to me that this flies in the face of the exemption. For people who are recovered, they've gone through a rehab program. It does, Your Honor. See, what I'm concerned about is, you may not know this, but I'm involved in different ways and have set up programs for veterans. And so if you added them all up, you're probably looking in this area of about 2,500, 3,000 of them. And most of them come through programs that are sponsored by the VA and the Salvation Army. And they're suffering from not only a drug and alcohol, but post-traumatic stress disorder. And they're going through hell, but many, many of them are able to get back on their feet and work hard and put in a good solid day's work because that's part of their recovery too, which is a lifetime matter. And what I'm concerned about is whether this restriction violates the public policy that's stated in the exemption. That's one of the things that bothers me. So what do you guys say about that? Well, by way of example, by the court's example, if an individual had applied to work at PMA prior to going off to Iraq and came back with PTSD and maybe some drug-related problems or had some drug-related problems and then had recovered, they would not be able to get that job if they reapplied at some later date. And this one-strike rule is very much a violation, in our opinion, of the public policy. And we're talking about how many people were rejected? Thirty-two? Twenty-seven, Your Honor. Twenty-seven out of how many who applied? Oh, there were thousands of people who applied. We don't know how many people just never reapplied because they were aware that this rule precluded them because it's a blanket rule. And, you know, this Court has spoken about blanket rules, blanket policies in Hernandez. And it says that company policy which screens out persons with a record of addiction who have been rehabilitated, we hold that a policy that serves to bar the reemployment of a drug addict, despite successful rehabilitation, violates the ADA. So this Court's already found that blanket policies, which this one is, and precludes recovering, in this case, an addict, are violations of the ADA. All right. We're going to take a short break at this time. In the middle of the case? What? You want to wait until the end? No, we'll hear the other half later. Okay. We're going to take a break now. Okay?  All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. All rise. This Court is now in session. Good evening. Jason Steele for Appellee Pacific Maritime Association.  There is no question that Mr. Lopez feels very strongly that the longshore industry one-strike rule is unfair. In fact, he opens his reply brief by saying not that the rule is unlawful, but that it's unjust. And he's entitled to that opinion. And I think it's fair to say he's not the only one that holds that opinion about the one-strike rule. But this is a case under the ADA and the Fair Employment and Housing Act. And the issue is not whether the rule is too strict or it's unfair or too harsh. The issue is does it discriminate on the basis of a disability. Judge Wu at the district court properly granted summary judgment in this case on both claims, the disparate treatment and the disparate impact claim, because there's simply no evidence under either theory that the one-strike rule discriminates against rehabilitated drug addicts. It's undisputed that the rule treats equally anyone who fails the test, whether or not they were or ever have been addicted to drugs or alcohol. There is no dispute in this case that that was the reason Mr. Lopez was disqualified. Well, how many people have failed the test because of three martinis? There's no evidence of that, Your Honor. And, in fact, let me address that briefly. That's taken a little bit out of context. Chuck Wallace, CUNY's former vice president, who was the one who had a hand in creating this one-strike rule in the mid-1980s, was talking about the background of the culture, the sort of lackadaisical alcohol drug culture they were trying to combat with this very strict rule. He didn't say this rule targets people who have three martinis at lunch. That was part of his description of the culture of the waterfront at that time. What he said very clearly was, and this is not refuted anywhere in the record. Well, those are the guys you had to worry about, don't you think? Your Honor, I think they had to worry about people who drank alcohol and people who used illegal drugs when they're coming to work. That's what this rule is targeting. Not people who are addicts. Anyone who took drugs a single time at a judge's paper, I think, as you pointed out, they might have taken marijuana their first time the night before the test. Those people will be excluded, and they are not protected by the statute. There's no evidence in this record that at the time Mr. Lopez was disqualified, either in 1998 or in 2005, that PMA had any knowledge of his disability. The Supreme Court in Raytheon was very clear that without knowledge of a disability, there can be no intentional discrimination on that basis. There is no evidence that, as I mentioned, the one-strike rule treats rehabilitated drug addicts any differently than it treats anyone else who fails the rule. What do you mean they had no knowledge of a disability? I mean, he didn't pass the marijuana test. Your Honor, what I'm saying is in 2005, the only thing they knew about Mr. Lopez was that he had failed a prior PMA, ILWU drug and alcohol test. They didn't have any indication at all that he was an addict, as opposed to someone who was simply a casual drug user, and that's a big distinction in this case because without knowledge of a disability, he can't discriminate on the basis of a disability. It's an intentional discrimination claim. I think that's very clear, and that's what the Supreme Court said in Raytheon. A guy that smokes marijuana and then goes and applies for a job, did they know they were going to be subject to a urinalysis test? They absolutely knew there was going to be a drug test. They knew that. Absolutely. So someone who does something like that has got to be, as that old song goes, on the road to degradation. Your Honor. They had to have some idea that someone who shows up and takes a test and shows positive for an illegal drug has got to have some problems with, you know, it's just not a casual thing. Your Honor, I would disagree with that. It's certainly possible that someone who fails a drug test is addicted. I think we can all agree on that. But the case law has been very clear on this point, that knowledge of a disability will be imputed to an employer when that's the only reasonable construction of the known facts, and that's absolutely not the case here. There's no actual evidence that anyone at PMA knew Mr. Lopez was a drug addict as opposed to someone who was a casual user. You can fail a drug test because you've taken drugs. You can take drugs because you are wanting to have a good time, maybe you're experimenting, maybe your friends left something to you, or maybe because you're an addict. But this case is all about whether Mr. Lopez was targeted because of his status as an addict, his alleged status as an addict, as opposed to the drug use itself. This court in the Collings case, which was prior to Raytheon even, which made this even more explicit, was very clear that drug-related misconduct, using drugs, failing a drug test, what have you, is legally distinct from the status of an addiction that may have caused that misconduct. It's perfectly lawful for an employer to take action against an applicant or an employee for failing a drug test, as long as they are not saying, we're targeting you because of your status as an addict. The law separates those two. Now, if PMA had said, you're an addict, we don't like addicts, so you're disqualified, obviously that summary judgment would have been appropriate. But there's no evidence of that in this case. And, in fact, for non-applicants, applicants are... What's the purpose of that rule? Chuck Wallace, PMA's vice president, who, again, was one of the authors of this rule, said that the purpose of the rule was to increase safety and productivity on the docks and to set a very high bar for future applicants. Now, the record shows that... Excuse me. So if you're going to set a very high bar for future applicants, then why do you accept applicants who are in recovery? They do accept applicants who are in recovery. Isn't that contradictory? They wanted to say... Look, Judge Ferguson, we're not contending in this case that the one-strike rule is the only way to achieve safety and productivity on the docks. That's not an issue in this case. The ADA and the FEHA don't require us to prove that. Or that it's the best rule. But this was an honest rule. This was a rule that the PMA and the union, one of the most powerful unions in the world, the International Long-Term Warehouse Union, sat down and said, we need to draw a line in the sand here. We don't care whether someone's an addict or a casual user or whatever, male, female, any group. If you fail our drug test, we are going to apply a very strict rule and say that you are done. It's a very lucrative position, and you've had your chance. We don't care whether you're an addict. We don't. And that's the undisputed testimony in this record. Let me add also that, which I think is a very important point, it's undisputed in this case, in addition to the lack of knowledge on PMA's part. So the union is happy with addicts. I mean, if an addict shows up and they're in recovery, then that's fine. But if a person just fell out of bed one morning and saw something and smoked it and went over there and showed positive for marijuana, then that person, even though in the future has never done anything like that again, that person cannot get a job with the union and with the Pacific Maritime Association. Does that make sense to you? I'm not 100 percent certain I understand your question, Judge Pagerson. The way the rule works is that you are disqualified if you fail the pre-employment drug and alcohol spell. But you don't have to be an addict to fail it, obviously. You could be a casual user. I think Judge Pagerson's question was really going to the sensibleness of the rule, because if someone used to be an addict and is in recovering status, and they take their first test after they're recovering, they will not test positive and they can be hired. That's right. And let me add, that's a very good point, because this does go to the reasonableness of it. The record shows that this rule is only applied to applicants. That group is singled out because they have no connection to the industry and, frankly, have fewer rights under the collective bargaining agreement. That's what Mr. Wallace said. And specifically your point, both of your points, actually, Judge Pagerson and Judge Graber, the industry has a very, I would say, robust program internally for current employees who have a drug problem to get rehabilitated. And you've seen this in the briefing. To me, our position is – Well, I've seen it in the briefing and I've seen it on cases that I handled at the district court. Absolutely. You know, where a big shipment of wine comes in and cheese and everybody has a party. Well, the point, I think, the implication, I should say, of this rehabilitation program, it's called the Alcohol and Drug Rehabilitation Program on the Waterfront, and they have a whole staff that runs it and they take it very seriously, is that if you're a current worker in whom the industry has invested and you come forward and say, I have a drug problem, you can get help. There's no one-strike rule for you. But upon entering the industry, your very first thing you do is to test positive for an illegal drug. They say, I'm sorry, but that's it for you. You've had your chance to get in the industry and there's a one-strike rule. There's nothing unlawful about that. Judge Pregerson, it sounds like you may think it's unfair, and I respect that view. Many others think it's unfair, but there's simply no evidence in the record that it's unlawful. The point I wanted to make with respect to the disparate treatment claim very briefly, before moving on to maybe the disparate impact claim, is that it's undisputed in this record that the only reason Mr. Lopez was disqualified, even assuming he was an addict, the only reason he was disqualified is because he failed this drug test. And again, that is what the Supreme Court, this Court, in Collings and in the Daft case, which is post-Raytheon, failing a drug or alcohol test is a legitimate basis to take an adverse employment action against an employee, even if they are an addict, and even if that misconduct, failing the drug test, is the direct result of the addiction. I think it's very important to note that not only is there no conflict in the evidence on this point, but Mr. Lopez affirmatively alleged this very fact in his complaint. In his first complaint, his First Amendment, Second Amendment, and the final Third Amendment complaint, he said the sole reason, his words, the sole reason for the disqualification in 1998 and 2005 was for failing the drug test. In other words, not because of his status as an addict. The Supreme Court in Raytheon said you can only discriminate unlawfully if you are doing it because of someone's status and not because of their conduct. So for all those reasons, there simply is no evidence of disparate treatment in this case, and summary judgment on that ground is proper. I think I can be very brief. The status arises out of conduct. But the Supreme Court made that very distinction in saying that's all the difference in the world, Judge Ferguson. If your status is the cause of the misconduct, you can still be held liable and face the consequences of that misconduct. Let me address very briefly the disparate impact point, which, Judge Graber, you had started with Mr. Lopez's counsel. To establish a disparate impact on the ADA and the Fair Employment and Housing Act, Mr. Lopez is required to present evidence that the selection rate for applicants who are rehabilitative drug addicts was significantly lower than the selection rate for others who might have failed the drug test. There simply is no evidence of that at all. In fact, there's no evidence that, other than Mr. Lopez, anyone who is disqualified was a rehabilitative addict. So he's expected to go out and hire statisticians and a whole crew of people to go out and gather all these statistics. Is that what you're saying? Judge Ferguson, almost every disparate impact case that this Court has decided and that the Supreme Court has decided. But you don't need to use statistics. Your Honor, the last several cases that this Court has decided, the Budnick case, the Pottinger case, which we've cited in our brief, say expressly you need statistics to show a disparate impact. If there's some other theoretical way, no court has approved it ever. The reason statistics are important are because you need to show some comparative, some disparate impact. Maybe you can show that with some other form of evidence, but none comes to my mind. Every single case that has addressed this, every single one. Well, what if you brought Mark Twain and put him on the stand and had him testify about statistics? I'm sure that would be very entertaining. I would like to see that, Judge Ferguson. You know what he said about statistics, don't you? I've heard a variation of it, yes. The point is this. There's no evidence of a disparate impact with statistics or anything else. There's no evidence this rule has any greater impact on addicts as opposed to casual users. That's fundamental to proving that claim. As opposed to what? Casual drug users who are not disabled, who don't have an addiction. There simply is no evidence. So let me just sum up, unless the panel has questions. Why do you think people use drugs casually? I'm sorry, Judge Ferguson? Why do they use drugs casually? Now, being a drug user, I can't speak to that, Your Honor. But I will say that I think it's pretty clear that there are people who are addicted to drugs and people who use drugs that aren't necessarily addicted. If you use drugs your first time, you're a drug user, but you're probably not addicted at that point, especially with marijuana. There's even a debate about whether marijuana can be addictive. Mr. Lopez has presented some evidence that he was addicted. So for purposes of our motion, we don't challenge that. But, again, on a disparate impact claim, 27 people in the 2004-2005 hiring process were disqualified on the basis of a prior drug test failure. Mr. Lopez's was in 1998. There's zero evidence that any of those people... Were all of those disqualified because of marijuana? No, Your Honor. They were disqualified for anything that the drug tests would have detected, cocaine, heroin, marijuana, and several others, methamphetamines. So if the panel has no further questions, I just want to reiterate that the issue here before the panel, before the district court and before this court, is not the fairness of the rule. We can all debate that. But the rule was created for honest reasons to try to combat drug use on the waterfront. And there's no evidence under a disparate treatment theory or a disparate impact theory that it violates the ADA or the FEDA. And with that rule submitted... How many of your members are in treatment programs? How many employees are in a treatment program? I don't know the answer to that. That's not in the record. Okay. Thank you very much. I think there are a number of questions of fact in this case. For example, the very genesis of the rule itself is question of fact. The ILWU president, Mr. Leal Sundet, testified that he could find no basis for the rule established really by PMA in this 10A, and we've briefed that fairly substantially. This is a blanket policy. And to say that no recovering drug addict is impacted and that there's no evidence of that is improper. It's not correct. Mr. Lopez was impacted by this rule. And Mr. Lopez, there's abundant evidence that he is a recovering addict. The counsel's right that we did say that Mr. Lopez was precluded from his employment as a result of the PMA one-strike rule. But that one-strike rule is unlawful on its face, per se, because it necessarily excludes people like Mr. Lopez. And importantly, I believe that the testimony of Mr. Wallace, their expert, does support that this is a rule characterized by stereotypical version of what people who have recovered from alcohol and drugs, what happens to them. So that's all I have. All right. Thank you. The matter stands submitted. The next item is
judges: Pregerson, Ripple, Graber